**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 10-136-DLB**

**MARTHA LYNN JEFFRIES**                                                       **PLAINTIFF**

vs.                         **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                               **DEFENDANT**

\*    \*    \*    \*    \*    \*    \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an unfavorable final decision of the Commissioner of Social Security. (Doc. # 2). The Court, having reviewed the record and the parties' cross-motions for summary judgment (Docs. # 11, 14), **affirms** the Commissioner's decision because it is supported by substantial evidence.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Martha Lynn Jeffries first filed an application for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) on April 12, 2006. (Tr. 121, 126). At the time of the filing, Plaintiff was forty-two (42) and alleged a disability onset date of April 11, 2006. *Id.* She alleged disability due to severe breathing problems, high blood pressure, and depression. (Tr. 142).

Plaintiff's claim was denied initially and upon reconsideration. (Tr. 93, 97, 103, 106). At Plaintiff's request, a hearing before Administrative Law Judge (ALJ) Donald A. Rising

1

was conducted on June 7, 2007. (Tr. 23, 110-17). The ALJ issued an unfavorable decision on September 4, 2007, finding that Plaintiff was not disabled and, therefore, not entitled to SSI or DIB payments. (Tr. 10-22). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 21, 2008. (Tr. 2-9).

Thereafter, Plaintiff appealed the ALJ's decision to the U.S. District Court for the Eastern District of Kentucky. Finding that "[a]ll of the mental health sources of record suggest the existence of more severe mental limitations than those found by the ALJ," Judge G. Wix Unthank reversed the ALJ's unfavorable decision and remanded the case for further consideration. (Tr. 626, 637). On remand, the Appeals Council vacated the Commissioner's prior decision, consolidated the case with a subsequent claim Plaintiff had filed on September 26, 2007, and remanded the case to the ALJ to issue a new decision on the consolidated claims. (Tr. 624).

The ALJ held a hearing on Plaintiff's consolidated claims on July 16, 2009 and issued another unfavorable decision on January 19, 2010. (Tr. 593-611, 1246). The Appeals Council did not assume jurisdiction, so the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action seeking review on May 19, 2010. (Doc. # 2).

## II. DISCUSSION

### A. OVERVIEW OF THE PROCESS

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence is more than

2

a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court is to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if it might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

### B. THE ALJ'S DETERMINATION

In determining disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant still performs substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listings of Impairments; Step Four, whether the claimant can still perform past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy which the claimant can perform. 20 C.F.R. § 416.920; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing 20 C.F.R. § 404.1520). "The burden of proof is on the claimant throughout the first four steps of this process to prove that [she] is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (internal citations omitted).

At Step One, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since her alleged onset date of April 11, 2006. (Tr. 598). At Step Two, the ALJ determined that Plaintiff has the combined severe impairments of obesity, chronic obstructive pulmonary disease, history of hypertension that is well-controlled with medication, lumbar disc disease, and depressive disorder. (Tr. 598). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 604). Specifically, the ALJ determined that the criteria of Paragraphs B and C of Section 12.04, "Affective Disorders," were not satisfied. (Tr. 604-05).

At Step Four, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform medium work, so long as she avoids exposure to temperature extremes, excessive humidity, and pulmonary irritants such as dust, fumes, and chemicals. (Tr. 605). The ALJ also limited Plaintiff to the performance of simple instructions and tasks in object-focused, non-public, and low-stress work settings. (Tr. 605). Based on this RFC, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a food bar attendant and a cleaner. (Tr. 608).

Finally, at Step Five, the ALJ considered Plaintiff's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines and testimony from a vocational expert (VE), and determined that there are jobs that exist in significant amounts in the national economy that Plaintiff can perform, such as machine tender, packager, and production laborer. (Tr. 609). Consequently, the ALJ found that Plaintiff has not been

under a disability as defined by the Social Security Act since April 11, 2006, her first application date. (Tr. 609).

**C.　ANALYSIS**

Plaintiff raises two issues on appeal. First, Plaintiff contends that the ALJ improperly and without good reason discounted assessments made by treating and examining sources. Plaintiff accordingly concludes that the ALJ's decision was not supported by substantial evidence. Second, Plaintiff avers that the hypothetical question upon which the ALJ relied was defective. The Court addresses each of these arguments in turn.

**1.　The ALJ provided good reasons for the weight he afforded the assessments of treating psychologist Machelle Decker-Callahan and Dr. Crystal Sahner.**

Plaintiff contends that the ALJ improperly discounted assessments made by licensed psychological associate Machelle Decker-Callahan, who treated Plaintiff, and by Dr. Crystal Sahner, who conducted a mental examination of Plaintiff. (Doc. # 11-1 at 11). The Commissioner responds that the ALJ properly evaluated both pieces of evidence and stated adequate good cause for the weight he afforded them. (Doc. # 14 at 11).

As Plaintiff's treating psychologist, Decker-Callahan's assessment is entitled to controlling weight "unless it is either not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' or is 'inconsistent with the other substantial evidence in the case record.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). Unless a treating source's opinion is afforded controlling weight, the Commissioner determines the appropriate weight to assign a medical opinion by considering a range of factors, including whether the opinion came from

5

an examining source; length of the treatment relationship; frequency of examinations; nature and extent of the treatment relationship; supportability and consistency of the opinion with the record as a whole; whether the treating source is a specialist; and any other relevant factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d). The Social Security Administration "promises claimants that it 'will always give good reasons in its notice of determination or decision for the weight it gives the claimant's treating source's opinion.'" *Smith*, 482 F.3d at 875 (quoting 20 C.F.R. § 404.1527(d)(2)).

The ALJ did not give Decker-Callahan's June 2, 2009 assessment controlling weight because he found it inconsistent with other substantial evidence of record. The ALJ specifically "considered" Decker-Callahan's most recent assessment in which she diagnosed Plaintiff as having depressive disorder and assessed a "fair prognosis—expect improvement in some symptoms but not all." (Tr. 608, 1089). Specifically, Decker-Callahan assessed impaired memory with difficulty comprehending simple instructions at times; being very anxious around people such that it interferes with shopping, appointments, and driving in unfamiliar places; being extremely anxious around authority figures; being easily distracted; and having symptoms that would distract others. (Tr. 1089-91).

The ALJ found that Decker-Callahan's assessment was contradicted by multiple Global Assessment of Functioning (GAF) scores in the record. (Tr. 608). These GAF scores were completed by Decker-Callahan between 2006 and 2009 and indicated only mild to moderate symptoms that were less severe than the symptoms described in the June 2009 Decker-Callahan assessment upon which Plaintiff relies. (Tr. 765, 923, 1089-

91, 1118, 1172, 1206, 1220); *see Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (explaining that "[a] GAF of 51-60 indicates 'moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)'").

Although Plaintiff correctly argues that an ALJ's own view of GAF scores cannot constitute sufficient evidence to overcome the deference due a treating source's medical opinion, *see Martin v. Comm'r of Soc. Sec.*, 61 Fed. App'x 191, 200 (6th Cir. 2003), she misconstrues how the ALJ used Decker-Callahan's GAF scores. Rather than use his own interpretation of Plaintiff's GAF scores to supplant Decker-Callahan's assessment, the ALJ used the scores for the permissible purpose of analyzing the reliability and internal consistency of Decker-Callahan's assessment. *Saragas v. Astrue*, No. 09-cv-236-DLB, 2010 WL 3432207, at *5 (E.D.Ky. Aug. 30, 2010); *Couch v. Astrue*, No. 10-cv-10-DLB, 2011 WL 690499, at *6 (E.D.Ky. Feb. 18, 2011) (discounting a physician's assessment after determining that his treatment record was internally inconsistent because the GAF score indicated more serious symptoms than the treatment notes revealed). Accordingly, the ALJ appropriately discounted Decker-Callahan's June 2009 assessment because it was inconsistent with previous GAF scores that she herself had assigned to Plaintiff.

The ALJ also found that Decker-Callahan's 2009 assessment was contradicted by a report written by Dr. Adam Wooten, a staff physician at Cumberland River Comprehensive Care Center where Plaintiff was being treated. (Tr. 608). The report, dated May 27, 2009, a mere six days before Decker-Callahan's assessment, was made after an evaluation, and concluded that Plaintiff "was not an [im]minent danger of harm to herself or others and required no further intervention other than to take her new

7

medications as prescribed and to continue follow up with her therapist." (Tr. 1156-57). As Plaintiff's counsel correctly observes, that Plaintiff was not an imminent danger to herself does not contradict directly Decker-Callahan's assessment. (Doc. # 15 at 4). However, Dr. Wooten's conclusion that Plaintiff required no additional intervention does contradict Decker-Callahan's more severe assessment, particularly her expectation of seeing improvement in some, but not all, of Plaintiff's symptoms. (Tr. 1089).

Accordingly, the ALJ did not commit reversible error when he discounted treating psychologist Decker-Callahan's 2009 assessment because it was contradicted by substantial evidence in the record—namely GAF scores completed by the same treating psychologist and a contemporaneous assessment completed by examining physician Dr. Wooten.

Plaintiff also contends that the ALJ did not give sufficient weight to a report by Dr. Crystal Sahner, who conducted a mental examination of Plaintiff. (Doc. # 11-1 at 11). At Plaintiff's administrative hearing, the ALJ examined a medical expert, Dr. Richard Gross. (Tr. 1262). Following a review of the record, Dr. Gross endorsed the Mental Residual Functional Capacity (MRFC) Assessment completed by a nonexamining source, Dr. Edward Stodola, which found Plaintiff capable of understanding, remembering, and carrying out simple instructions for two (2) hour segments over an eight (8) hour work day, five (5) days a week; relating adequately in object-focused settings; and adapting to the changes and pressures of a routine setting. (Tr. 384, 1266-68).

The ALJ responded by asking how that assessment could be reconciled with Dr. Sahner's determination that Plaintiff's "ability to sustain attention and concentration towards

8

the performance of simple, repetitive tasks, cognitively and emotionally is moderately affected due to her depression and anxiety." (Tr. 380, 1266). Dr. Gross acknowledged that the two assessments could not be reconciled, but based on specific pieces of evidence—for example, Plaintiff's ability to spell "world" forwards and backwards—as well as the record as a whole, concluded that Dr. Stodola's MRFC was the more accurate assessment. (Tr. 1267-68). Accordingly, Dr. Gross asserted that Plaintiff would have "no problem at all" in carrying out simple one- or two- step tasks and following instructions in an object-focused work setting. (Tr. 1268).

In his decision, the ALJ expressly stated that he "considered" Dr. Sahner's consultative examination opinion but determined that the assessment of Dr. Gross, the medical expert, was "well-founded and premised on a more thorough review of the claimant's treatment history." (Tr. 608). By contrast, the ALJ concluded that Dr. Sahner's assessment "was based on a more limited review of the record and appears to have centered more on the claimant's subjective reports." (Tr. 608, 375-81). Discounting Dr. Sahner's report (which was founded on subjective complaints) in favor of an assessment based on objective medical evidence in the record was appropriate because the Sixth Circuit has ruled that "[s]ubjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability." *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995); *Durio v. Comm'r of Soc. Sec.*, 82 F.3d 417, 1996 WL 169362, at *2 (6th Cir. Apr. 10, 1996) (treating physician's report discounted because it "appears to be a characterization of the plaintiff's complaints, rather than the results of any independent medical evaluation"). The ALJ's explanation that Dr. Sahner's

9

assessment was contradicted by substantial evidence of record—specifically Dr. Stodola's MRFC, which Dr. Gross endorsed after he concluded that Dr. Stodola conducted a more thorough review than Dr. Sahner had—constituted a good reason for discounting Dr. Sahner's assessment.

Moreover, the ALJ did not completely reject either Decker-Callahan's or Dr. Sahner's assessment. Rather, "out of [an] abundance of caution," the ALJ incorporated Dr. Sahner's limitation of a low stress work setting in his RFC, even while he opined that it was not necessary. (Tr. 608). Additionally, the ALJ incorporated a limitation to nonpublic work settings based on serial update assessments from Decker-Callahan that showed "moderately low" interpersonal functioning. (Tr. 608).

Because the ALJ provided good reasons for discounting—though not completely rejecting—Decker-Callahan's 2009 assessment and Dr. Sahner's assessment, Plaintiff's motion for summary judgment on this claim is **denied** and the Commissioner's is **granted**.

> **2. The ALJ did not adopt Section III of the MRFC in its entirety and the ALJ's hypothetical to the VE incorporated all the limitations he included in his final RFC.**

Plaintiff also contends that the ALJ's hypothetical is inadequate because it failed to incorporate all the restrictions contained in Section III of the MRFC Assessment, which the medical expert, Dr. Gross, endorsed. (Doc. # 11-1 at 11). Specifically, Plaintiff observes that Section III of the MRFC includes the limitation that Plaintiff is mentally able to carry out simple instructions "for 2 hr segments over an 8 hour work day" but the ALJ's hypothetical to the VE included no such restriction. (Tr. 384, 1283-84). Plaintiff further argues that Sixth Circuit precedent requires the ALJ to incorporate all Plaintiff's impairments in the

hypothetical to the VE, if the VE's testimony is to serve as substantial evidence. (Doc. # 11-1 at 11-12). The Commissioner responds that the ALJ's decision made it clear that he was not adopting all of the limitations set out in the MRFC Assessment, and that the hypothetical to the VE included those portions of the MRFC Assessment that he did adopt. (Doc. # 14 at 5-6).

The ALJ's hypothetical to the VE incorporated all the impairments that the ALJ assessed. Though Plaintiff contends that the ALJ adopted Section III of the MRFC in whole, the transcript of the administrative hearing establishes that the ALJ adopted most, but not all, of Section III. In questioning Dr. Gross, the medical expert, the ALJ said: "On the last page [of the MRFC] it describe[s] residual functional capacity as able to carry-out simple instructions, relate adequately in object focused settings, and adapt to the changes in pressures of a routine work setting. Do you feel that the record, as a whole, reflects this opinion? Or not?" (Tr. 1266). Notably, the ALJ's question to Dr. Gross specified each limitation assessed in Section III, except for the two-hour segment limitation. Later, the ALJ confirmed that Dr. Gross believed "that the record would support a finding of ability to carry-out simple one or two step tasks, instructions in object focused work settings?" (Tr. 1268). Again, the ALJ did not mention the two-hour segment limitation.

Not surprisingly, then, the ALJ did not include the two-hour segment limitation in his hypothetical to the VE. Instead, the ALJ's hypothetical to the VE included most, but not all, of the limitations in Section III of the MRFC, as well as additional limitations assessed by Dr. Sahner (i.e., low stress work setting) and Decker-Callahan (i.e., nonpublic work setting), that were not in Section III of the MRFC. (Tr. 1283-84). That the ALJ (1) incorporated

11

some of the Section III limitations; and (2) selectively incorporated limitations from Dr. Sahner and Decker-Callahan demonstrates that the ALJ did not adopt all of the limitations in Section III of the MRFC, but did incorporate all the limitations that he assessed in his hypothetical to the VE.

This conclusion is corroborated by the ALJ's written decision, which provided Plaintiff's RFC and articulated how he weighed the evidence. In his decision, the ALJ explained why he discounted the assessments of Dr. Sahner and Decker-Callahan, but decided to incorporate one restriction assessed by each in the RFC. (Tr. 608) (discussed *supra* Part II.C.1). The ALJ's decision also explained that he agreed with Dr. Gross that Section III of the MRFC "represents an accurate characterization of the claimant's mental functional limitations, *viz., the ability to carry out simple instructions/tasks in object-focused settings.*" (Tr. 608) (emphasis added). Just as in the administrative hearing, the ALJ specified those portions of Section III with which he agreed, and notably omitted the two-hour segment limitation. Thus, not surprisingly, the ALJ's RFC included no mention of the two-hour segment limitation, but instead included the same impairments as were in the hypothetical to the VE. (Tr. 605).

According to the Sixth Circuit, "evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'" is the ALJ's responsibility under the Social Security regulations. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). Thus, the ALJ was well within his authority not to incorporate the two-hour segment limitation in his RFC. Correspondingly, the ALJ's omission of the two-hour segment limitation in his hypothetical

to the VE was not an oversight that rendered the VE's testimony inapplicable, but a reflection of the ALJ's reasoned decision to adopt only a portion of Section III of the MRFC.[1] *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

As the Commissioner correctly argues, the Court's conclusion that the ALJ adopted only part, but not all of Section III of the MRFC, distinguishes this case from *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010). Plaintiff cites *Ealy*, 594 F.3d at 516, for the proposition that "for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." In *Ealy,* the ALJ relied on a hypothetical that did not include speed- and pace- based restrictions that the ALJ found claimant to have. *Id.* By contrast, as described above, the ALJ's hypothetical in this case included all the limitations that the ALJ found Plaintiff to have, and that he incorporated in his final RFC; the omission of the two-hour segment limitation was based on the ALJ's decision not to adopt that limitation from Section

---

[1] The ALJ's decision to omit the two-hour segment limitation is supported by substantial evidence. First, the ALJ observed in his decision that "the claimant has complained of concentration and memory difficulties, but as noted previously, her Comprehensive Care notes consistently indicate that she was able to manage her own money and care for her son." (Tr. 605). The ALJ also observed that Plaintiff "was trying to help her ex-husband get off of drugs, a task which would seemingly require a decent amount of concentration and attention." (Tr. 605). Lastly, when asked about Dr. Sahner's and Decker-Callahan's assessments that Plaintiff had a concentration deficit, Dr. Gross responded: "Well, I don't think that Dr. Sa[h]ner said that there's marked impairments in concentration. I don't see how she could have given that, that right before her, in her presence, this person behaved in a way that she could concentrate and persist on a task." (Tr. 1276).

13

III of the MRFC. Accordingly, the ALJ's hypothetical to the VE "accurately portray[ed] [Plaintiff's] physical and mental impairments." *Id.*

### 3. Alternatively, the ALJ's failure to incorporate the two-hour segment limitation in his hypothetical and RFC was harmless error.

Alternatively, the Court holds that if the ALJ erred in omitting the two-hour segment limitation from the hypothetical to the ALJ, or his final RFC determination (i.e., if there was not substantial evidence for omitting the limitation), the error was harmless. As discussed, during the administrative hearing, the ALJ posed a hypothetical to the VE that included all the limitations contained in his final RFC. (Tr. 1283-84). The VE responded that a person with such limitations could be a machine tender, packager, or production laborer. (Tr. 1284-85). The ALJ then posed a follow-up hypothetical that incorporated all the limitations assessed in Section I of the MRFC: "Assume the following moderate limitations: detailed instructions; maintaining attention and concentration [for] extended periods; completing normal workday without interruption from psychologically based symptoms; performing at a consistent pace without unreasonable number, length rest periods; interacting appropriately with the public; responding appropriately to changes in the work setting." (Tr. 1285-86).[2] The VE responded that the additional limitations would not exclude the

---

[2] The limitations described in Section III of the MRFC elaborate on the summary conclusions assessed in Section I of the MRFC. Thus, Plaintiff's two-hour segment limitation was reflected in the moderate limitations assessed in Section I. If this was not the case—and the two-hour segment limitation was more severe than a moderate limitation—then the summary conclusions in Section I should have reflected so with an assessment of "markedly limited" in at least one category.

Notably, the district court previously remanded this case because the ALJ failed to pose the "actual restrictions" in Section I and, instead, relied on the "detailed elaboration[s]" in Section III. (Tr. 637). Though the ALJ disagreed with this legal conclusion—and cited Programs Operation Manual System § DI 24510.060 in support—he nonetheless asked the VE about the Section I

14

previously provided occupations. (Tr. 1286). Even if the ALJ had adopted Section III of the MRFC in full it would not have changed the VE's conclusion. Accordingly, if the ALJ's decision not to adopt Section III of the MRFC in full was an error, that error was harmless. *See Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 463 (6th Cir. May 8, 2007) (finding ALJ's error harmless, and validating VE's response, where the hypothetical mistakenly represented that the claimant had a twelfth grade education when she only had third-to-fifth grade level abilities because "as a whole the ALJ's hypothetical sufficiently presented [the claimant's] relevant mental limitations").

### III.  CONCLUSION

Because substantial evidence supports the ALJ's RFC determination, and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act,

**IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 11) is **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 14) is **GRANTED**;

4. This matter is **STRICKEN** from the docket; and

5. A separate Judgment affirming this decision will be entered contemporaneously herewith.

---

limitations.  (Tr. 596 n.2).

This 16th day of June, 2011.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-10-136-MOO.wpd